

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08-CV-380

| | |
|---|---|
| LINDA BREWTON, in her capacity as the Administratrix for and on behalf of the Estate of DUSTIN JARREAU BREWTON<br><br>Plaintiff,<br><br>v.<br><br>DAVID EARL BEACH and KNIGHT TRANSPORTATION, INC.,<br><br>Defendants. | **ORDER APPROVING SETTLEMENT** |

THIS MATTER coming on to be heard, and being heard, before the undersigned District Judge for the U.S. District Court for the Western District of North Carolina, upon the request of the parties to review and approve a proposed settlement pursuant to N.C. Gen. Stat. § 28A-13-3(23), and the Court after reviewing the proposed settlement and all its terms and after satisfying itself that the Plaintiff, the natural mothers of the minor beneficiaries, the guardian of the estates of the minor beneficiaries, the attorney for Plaintiff and the attorney for the Defendant Knight Transportation have reviewed and consented to the proposed settlement, and have agreed to be bound by its terms, being of the opinion, that such approval should be granted. makes the following:

## **FINDINGS OF FACT**

1. This accident arises out of a vehicular accident that occurred on U.S. Highway 74 Bypass/W. Dixon Blvd., in Cleveland County, Shelby, North Carolina.

2. On July 24, 2006, Dustin Jarreau Brewton was the operator of an automobile was struck by a vehicle operated by Defendant Beach and owned by Defendant Knight Transportation. As a result of the collision and injuries sustained therein, Dustin Jarreau Brewton died on July 24, 2006.

{SBH:337827.}

3. Linda Brewton, mother of Dustin Jarreau Brewton, has been duly appointed the Administratrix of the Estate of Dustin Jarreau Brewton by the clerk of Superior Court of Cleveland County (Estate file: 6E 646), and is currently acting in that capacity;

4. A lawsuit asserting a claim for the wrongful death of Dustin Jarreau Brewton pursuant to N.C.G.S. §28A-18-2 was filed in Mecklenburg County Superior Court, file number 08-CVS-16036 (hereinafter the "Lawsuit"). The Lawsuit was subsequently transferred to the United States District Court for the Western District of North Carolina, and has been assigned file number 3:08-CV-00380;

5. Defendant Beach has not been served with a copy of the Complaint and has not filed a responsive pleading;

6. Defendant Knight Transportation filed an Answer to the Complaint and has admitted that defendant Beach was an employee of Knight Transportation, that defendant Beach was negligent on the occasion in question and that the negligence of defendant Beach was a proximate cause of the death of Dustin Jarreau Brewton;

7. Dustin Jarreau Brewton, Jr., a minor, and Faith Brewton, a minor, are the surviving children of Dustin Jarreau Brewton and are the only persons entitled to share in the proceeds of the wrongful death of Dustin Jarreau Brewton;

8. Susan Biggers, attorney at law, has been duly appointed as Guardian of the Estate of Dustin Jarreau Brewton, Jr., a minor, and as Guardian of the Estate of Faith Brewton, a minor, for the purposes of administering the proceeds of the proposed settlement during their minority;

9. The parties have agreed to a settlement of all issues, the terms of which are incorporated into a Settlement Agreement and Release, a copy of which is attached hereto as Exhibit 1.

10. The parties to this proceeding seek judicial review and approval of that this settlement in accordance with N.C.G.S. §28A-13-3(23).

11. The proposed settlement as set forth in the Settlement Agreement and Release is fair and just under all the circumstances, and in the best interest of the minor beneficiaries, and ought to be approved.

Based upon the foregoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action;

2. Having carefully viewed the terms of the settlement, including the provisions for future periodic payments described in Exhibit 1. and, in particular, taking into account the interests of the minor beneficiaries, the Court concludes that the settlement proposed by the parties described herein is fair and just and in the best interests of the minor beneficiaries and ought to be approved.

3. The parties hereto consent to the entry of this Order.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED** as follows:

1. With the consent of the parties and the participation of the duly appointed guardian of the estates of the minor beneficiaries, the settlement set forth in the Settlement Agreement and Release attached hereto as Exhibit 1 is approved in all respects, including that portion of the settlement providing for future periodic payments to the minor beneficiaries;

2. Upon receipt of the cash payments set forth in sections 3.1, 3.2, 3.3 and 3.5 of Exhibit 1, counsel for Plaintiff and counsel for Defendant Knight shall execute and file a stipulation of dismissal, <u>with prejudice</u>, of the Lawsuit as to all parties;

3. The parties shall bear their own costs.

This 14 day of December, 2009.

*[Signature]*
U.S. District Court Judge

**CONSENTED TO:**

*[Signature]*
Linda Brewton, Administratrix of the Estate of Dustin Jarreau Brewton

*[Signature]*
Cierra Spikes, Natural mother of Dustin Jarreau Brewton, Jr., a minor

*[Signature]*
Monique Marie Trammell, Natural mother of Faith Brewton, a minor

*[Signature]*
Susan Biggers, Guardian for the Estate of Dustin Jarreau Brewton, Jr., a minor

*[Signature]*
Susan Biggers, Guardian for the Estate of Faith Brewton, a minor

*[Signature]*
Michael A. Jones, Esq.
Attorney for Plaintiff

_____
Ned A. Stiles, Esq.
Attorney for Defendant Knight Transportation

# SETTLEMENT AGREEMENT AND RELEASE

**This Settlement Agreement and Release** (the "Settlement Agreement") is made and entered into, upon approval by the Court, among Linda Brewton, Administratrix of the Estate of Dustin Jarreau Brewton ("Plaintiff"), and Knight Transportation, Inc. ("Knight"), for itself and David Earl Beach (collectively "Defendants").

**Recitals**

A. On July 24, 2006, Dustin Jarreau Brewton sustained bodily injuries resulting in his death in a motor vehicle accident involving a vehicle operated by Dustin Jarreau Brewton and a vehicle operated by David Earl Beach and owned by Knight Transportation that occurred on U.S. Highway 74 Bypass/W. Dixon Blvd., in Cleveland County, Shelby, North Carolina (hereinafter referred to as the "Occurrence");

B. Linda Brewton is the duly appointed and acting Administratrix of the Estate of Dustin Jarreau Brewton.

C. Currently, a lawsuit is pending in the United States District Court, Western District of North Carolina, captioned <u>Linda Brewton, Administratrix of the Estate of Dustin Jarreau Brewton v. David Earl Beach and Knight Transportation, Inc.</u>, (3:08-CV-380) (the "Lawsuit"), wherein Plaintiff is seeking damages for alleged injuries sustained by, and the death of, Dustin Jarreau Brewton as a result of the negligence of the Defendants and the Occurrence;

NOW, THEREFORE, and subject to the approval of the Court, the parties hereto agree to the following terms and conditions of settlement, which shall be in full, final, and complete satisfaction, discharge, and release of all claims of any kind or nature whatsoever that Plaintiff may now or hereafter have, whether such claims have been asserted or are otherwise existent, or whether such claims are now known or hereafter to become known, arising in any way or manner relating to, or a consequence of, the Occurrence or Lawsuit described herein;

**1.0 Warranties**

1.1 All parties warrant and represent, each to the other, that they have been fully informed and have full knowledge of the terms, conditions, and effects of this Settlement Agreement;

1.2     All parties warrant and represent, each to the other, that no promise or inducement has been offered or made except as herein set forth, and that this Settlement Agreement is executed without reliance upon any statement or representation by any other party or his agent other than as herein recited.

1.3     At the time of his death, Dustin Jarreau Brewton was not married but was survived by two minor children: Faith Brewton, born on January 24, 2004, and Dustin Jarreau Brewton, Jr., born on July 25, 2006;

1.4     Cierra Spikes is the natural mother of Dustin Jarreau Brewton, Jr. and has sole custody of Dustin Jarreau Brewton, Jr.  The undersigned Cierra Spikes approves the settlement contained herein.

1.5     Monique Marie Trammell is the natural mother of Faith Brewton, and has sole custody of Faith Brewton.  The undersigned Monique Marie Trammell approves the settlement contained herein.

1.6     The minor beneficiaries and their mothers are citizens and residents of Cleveland County, North Carolina.

1.7     A. Susan Biggers, attorney with the firm of Deaton, Biggers & Hoza, PLLC, Shelby, Cleveland County, North Carolina, has been duly appointed guardian of the estates of the minor beneficiaries, Dustin Jarreau Brewton, Jr., and Faith Brewton, for the purpose of administering the settlement proceeds of the minor beneficiaries prior to their reaching the age of 18 years in accordance with N.C.G.S. § 35A-1220 *et seq*.

## 2.0    Release and Discharge

2.1     IN CONSIDERATION OF the payments set forth in Section 3, the Plaintiff hereby completely releases and forever discharges Defendants, their agents, employees, insurers, affiliated companies, predecessors, successors, and assigns, none of whom admit any liability, AND all other persons, corporations, or other entities, whatsoever, from any and all liability, claims, demands, causes of action, or suits of any kind or nature whatsoever, whether in tort or in contract, including, but not limited to, all claims for bodily and personal injuries, conscious pain and suffering, emotional distress, lost wages or income, medical and other expenses or damages prior to the death of Dustin Jarreau Brewton, funeral and burial expenses, punitive damages, the alleged wrongful death of Dustin Jarreau Brewton, and any other damages recoverable under N. C. Gen. Stat. §28A-18-2 or otherwise, AND from any and all claims or causes of action of any kind or nature whatsoever that the Estate of Dustin Jarreau Brewton has, or may have, arising out of or relating in any way or manner to the Occurrence or the Lawsuit described herein, including, but without limitation, any and all known or unknown claims which have resulted or may result from any alleged acts or omissions of the Defendants.

2.2    This release and discharge shall also apply to Defendants' past, present, and future officers, directors, stockholders, attorneys, agents, heirs, servants, representatives, employees, subsidiaries, affiliates, partners, predecessors and successors in interest, and assigns and all other persons, firms, or corporations with whom any of the former have been, are now, or may hereafter be affiliated.

2.3    This release and discharge on the part of the Plaintiff shall be a fully binding and complete settlement between the Plaintiff and the Defendants, their heirs, assigns, and successors.

2.4    The Plaintiff acknowledges and agrees that the release and discharge set forth above is a general release. Plaintiff expressly waives and assumes the risk of any and all claims for damages which exist as of this date, but of which the Plaintiff does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Settlement Agreement. The Plaintiff further agrees that Plaintiff has accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact. Plaintiff assumes the risk that the facts or law may be other than Plaintiff believes.

2.5    In further consideration of the settlement referred to herein, the Plaintiff agrees to satisfy and discharge any lien, claim of lien (including any claimed medical lien), or subrogation interest, if any, that may now or hereafter exist with respect to the above claim and lawsuit, or the settlement proceeds referred to herein. The Plaintiff agrees to indemnify and hold harmless the parties herein released for and from any other claims or amounts, including reasonable attorney's fees and expenses, that the parties herein released incur or might be compelled to pay as a result of any such lien, claim of lien, or subrogation interest.

2.6    The Plaintiff represents that Faith Brewton and Dustin Brewton, Jr., the surviving children of Dustin Jarreau Brewton, are the only persons entitled to share in the recovery of any proceeds for the alleged wrongful death of Dustin Jarreau Brewton.

## 3.0    Payments

Upon execution and delivery of this Settlement Agreement and Release and approval by the court, Knight will pay the following sums:

3.1    <u>Attorney's fees and expenses:</u>

a)    $300,000 to Michael A. Jones for attorney's fees;

b)    $16,131.04 to Michael A. Jones, attorney at law, in reimbursement of costs and expenses.

3.2 <u>Payment of premium for guardian bonds:</u>

Subject to the approval of the Court, Defendant Knight Transportation, Inc. has paid, or will pay, premiums for guardian bonds on the guardian for the estate of the minor beneficiaries of the Estate of Dustin Jarreau Brewton, as follows:

a) $9,171.00 for a guardian's bond for the Estate of Faith Brewton, a minor;

b) $11,159.00; for a guardian's bond for the Estate of Dustin Jarreau Brewton, Jr., a minor.

(Payments to or for the benefit of Dustin Jarreau Brewton, Jr., a minor)

### 3.3 Payments to or for the benefit of Dustin Jarreau Brewton, Jr. during his minority:

One cash payment of $35,000 to the guardian of the Estate of Dustin Jarreau Brewton, Jr. for the use of and benefit of Dustin Jarreau Brewton, Jr.

### 3.4 Summary of Periodic Payments (Dustin Jarreau Brewton, Jr.)

a) <u>Periodic payments payable to the Guardian of Dustin Jarreau Brewton, Jr., a minor (Payee):</u>

$1,000 payable monthly, guaranteed 14 years and 7 months, beginning December 16, 2009 with the last guaranteed payment payable June 16, 2024;

b) <u>Periodic Payments Payable to Dustin Jarreau Brewton, Jr. (Payee):</u>

$1,250 payable monthly, guaranteed 12 years and 1 month beginning July 25, 2024 with the last guaranteed payment payable July 25, 2036;

$10,000 payable annually, guaranteed 7 years, beginning July 25, 2024 with the last guaranteed payment payable July 25, 2030.

$25,000 guaranteed lump sum payable July 25, 2031;

$146,278 guaranteed lump sum payable July 25, 2036.

### 3.5 Payments to or for the Benefit of Faith Brewton:

One cash payment of $35,000 to the guardian of the Estate of Faith Brewton for the use of and benefit of Faith Brewton.

### 3.6 Summary of Periodic Payments (Faith Brewton)

a) Periodic Payments Payable to the Guardian of Faith Brewton, a minor (Payee):

$1,000 payable monthly, guaranteed 12 years and 1 month, beginning December 16, 2009 with the last guaranteed payment payable December 16, 2021;

b) Periodic Payments Payable to Faith Brewton (Payee):

$1,250 payable monthly, 12 years and 1 month, beginning January 24, 2022 with the last guaranteed payment payable January 24, 2034;

$10,000 payable annually, guaranteed 7 years, beginning on January 24, 2022 with the last guaranteed payment payable January 24, 2028;

$25,000 guaranteed lump sum payable January 24, 2029;

$137,158 guaranteed lump sum payable January 24, 2034.

All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of §104(a)(2) of the Internal Revenue Code of 1986, as amended.

### 4.0 Payees Rights to Payments

Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased, or decreased by the Plaintiff or any Payee, nor shall the Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

### 5.0 Payees' Beneficiaries

5.1 Any payments to be made after the death of Dustin Jarreau Brewton, Jr. pursuant to the terms of this Settlement Agreement in Section 3.4 shall be made to the Estate of Dustin Jarreau Brewton, Jr., unless otherwise Court ordered, until the age of majority. Upon reaching the age of majority, Dustin Jarreau Brewton, Jr. may designate any such person or entity as beneficiary in writing to Knight or Knight's Assignee. If no such person or entity is so designated by Dustin Jarreau Brewton, Jr., or if the person designated is not living at the time of Dustin Brewton, Jr.'s death, such payments shall be made to the Estate of Dustin Jarreau Brewton, Jr. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to Knight or Knight's Assignee. The designation must be in a form acceptable to Knight or Knight's Assignee before such payments are made.

5.2 Any payments to be made after the death of Faith Brewton pursuant to the terms of this Settlement Agreement in Section 3.6 shall be made to the Estate of Faith Brewton, unless otherwise Court ordered, until the age of majority. Upon reaching the age of majority, Faith Brewton may designate any such person or entity as beneficiary in writing to Knight or Knight's Assignee. If no such person or entity is so designated by Faith Brewton, or if the person designated is not living at the time of Faith Brewton's death, such payments shall be made to the Estate of Faith Brewton. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to Knight or Knight's Assignee. The designation must be in a form acceptable to Knight or Knight's Assignee before such payments are made.

**6.0 Consent to Qualified Assignment**

6.1 Plaintiff acknowledges and agrees that Knight may make a qualified assignment within the meaning of §130(c) of the Internal Revenue Code of 1986, as amended, of Knight's liability to make the periodic payments set forth in Sections 3.4 and 3.6 to Employers Insurance of Wausau (the "Assignee"). The Assignee's obligation for payment of the periodic payments shall be no greater than that of Knight (ordered by Judgment or Agreement) immediately preceding assignment of the Periodic Payment obligations.

6.2 Any such assignment, if made, shall be accepted by the Plaintiff without right of rejection, and shall completely release and discharge Knight from the Periodic Payment obligations assigned to the Assignee. The Plaintiff recognizes that, in the event of such an assignment, the Assignee shall be the sole obligor with respect to the Periodic Payment obligations, and that all the other releases with respect to the Periodic Payment obligations that pertain to the liability of Knight shall thereupon become final, irrevocable, and absolute.

6.3 The obligation of the Assignee and/or Annuity Issuer to make the periodic payments shall be guaranteed by Liberty Mutual Insurance Company as referenced in Exhibit A.

## 7.0 Right to Purchase an Annuity

7.1 Knight, for itself, or through their Assignee, reserve the right to fund the liability to make the Periodic Payments as defined in Sections 3.4 and 3.6 through the purchase of annuity policies from Liberty Life Assurance Company of Boston (the "Annuity Issuer"). Knight, or the Assignee, shall be the sole owner of the annuity policies and shall have all rights of ownership. Knight or the Assignee may have the Annuity Issuer mail such periodic payments directly to the Payee(s), who shall be responsible for maintaining a current mailing address with the Annuity Issuer.

## 8.0 Discharge of Obligation

The obligation of Knight or their Assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the respective Payee(s) named in Sections 3.4 and 3.6 of the Settlement Agreement.

## 9.0 Attorney's Fees

Each party hereto shall bear their own attorney's fees, costs and expenses arising incurred in connection with the Occurrence, the Lawsuit, this Settlement Agreement and the matters and documents referred to herein, the filing of a dismissal(s), and all related matters.

## 10.0 Filing Dismissal with Prejudice

Upon approval of the Court, counsel for Plaintiff and Knight Transportation shall execute and file a stipulation of dismissal with prejudice of all actions filed by Plaintiff arising out of the Occurrence as to all defendants.

## 11.0 Representation of Comprehension of Documents

In entering into this Settlement Agreement, Plaintiff represents that she has relied upon the advice of Plaintiff's attorney, who is the attorney of Plaintiff's own choice, concerning legal and income tax consequences of this Settlement Agreement; that the terms of this Settlement Agreement have been completely read and explained to Plaintiff by Plaintiff's attorney; and that the terms of this Settlement Agreement are fully understood and voluntarily accepted by Plaintiff.

## 12.0 Warranty of Capacity to Execute Agreement

Plaintiff represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of actions referred to in this Settlement Agreement, except as otherwise set forth herein; and that Plaintiff has the

sole right and exclusive authority to execute this Settlement Agreement; and that Plaintiff has not sold, assigned, transferred, conveyed, or otherwise disposed of any claims, demands, obligations, or causes of action referred to in this Settlement Agreement.

## 13.0 Confidentiality

Plaintiff and her Attorneys understand and agree that it is a material condition of the payment of the monies referenced above that Plaintiff and her Attorneys maintain absolute confidentiality of this settlement and its terms and, further, they specifically agree that neither the nature of this settlement nor the amount of the settlement shall be disclosed, communicated, publicized, or discussed, either directly or indirectly, with any person in any manner whatsoever (including any news media), except to Plaintiff's attorneys, business or tax advisers, and family members on a <u>need to know basis</u>, or as required by law. If any such persons are advised of the settlement or any of its terms, Plaintiff and her Attorneys agree and represent that they will advise such persons that such information is confidential as contemplated herein. If this covenant of confidentiality is breached, Plaintiff and Attorneys agree that harm will be caused to all releasees.

## 14.0 Governing Law

This Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of North Carolina.

## 15.0 Additional Documents

All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

## 16.0 Entire Agreement and Successors in Interest

This Settlement Agreement contains the entire agreement between the Plaintiff and the Defendants with regard to the matters set forth herein, and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors, and assigns of each.

## 17.0 Effectiveness

This Settlement Agreement shall become effective on the date set forth on page 1 upon approval of the Court.

IN WITNESS WHEREOF, the parties hereto have duly executed this Settlement Agreement in multiple originals.

_____     Date: __12/10/09__
Plaintiff: LINDA BREWTON,
Administratrix of the Estate of DUSTIN
JARREAU BREWTON

_Cierra Spikes_      12/10/09
Cierra Spikes, Natural mother of Dustin Jarreau    Date:
Brewton, Jr, a minor


_Monique Trammell_     12/10/09
Monique Marie Trammell, Natural mother of    Date:
Faith Brewton, a minor

_____  Date: 12/10/09
Susan Biggers, Guardian for the Estate of
Faith Brewton, a minor


_____  Date: 12/10/09
Susan Biggers, Guardian for the Estate of
Dustin Jarreau Brewton, Jr., a minor

APPROVED AS TO FORM AND CONTENT:

_____     _12-10-09_____
Attorney for Plaintiff                Date:
Mr. Michael A. Jones
Michael Jones & Associates, PLLC
100 E. Parrish St., #450
Durham, NC 27701

This Settlement Agreement contains the entire agreement between the Plaintiff and the Defendants with regard to the matters set forth herein, and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors, and assigns of each.

**17.0 Effectiveness**

Upon approval of the Court, this Settlement Agreement shall become effective on the date set forth on page 1.

IN WITNESS WHEREOF, the parties hereto have duly executed this Settlement Agreement in multiple originals.

_____
Plaintiff: LINDA BREWTON,
Administratrix of the Estate of DUSTIN
JARREAU BREWTON

Date: _____

Defendant: KNIGHT TRANSPORTATION, INC.

By: *[signature]*

Title: Director of Corp Claims

Date: 12/19/19

ANNUITANT'S NAME _____ ANNUITY POLICY _____

# GUARANTEE

THIS GUARANTEE is dated as of February 3, 1998 (the "Effective Date").

WHEREAS Liberty Mutual Insurance Company (the "Guarantor") indirectly owns 90% of the issued and outstanding voting securities of Liberty Life Assurance Company of Boston (the "Primary Obligor")

WHEREAS the Guarantor desires to enhance the financial strength of the Primary Obligor in connection with its insurance policies and annuity contracts; and

WHEREAS the corporate interests of the Guarantor will be furthered and the value of its investment in the Primary Obligor preserved and potentially enhanced by entering into this Guarantee, and this Guarantee is convenient to the conduct, promotion and attainment of the Guarantor's business;

NOW, THEREFORE, for good and valuable consideration, the Guarantor agrees as follows:

1. GUARANTEE OF PAYMENT. The Guarantor hereby guarantees the full and punctual payment when due of any obligations (the "Obligations") of the Primary Obligor to an Obligee arising out of or in connection with any insurance policy or annuity contract (each such policy or contract, a "Contract") issued to or for the benefit of the Obligee on or after the Effective Date. However, "Obligations" shall not include any obligation to an insured or annuitant arising out of or in connection with any insurance policy or annuity contract which becomes an obligation of the Primary Obligor as a result of any sale, combination, merger, acquisition, restructuring or other event which results in the Primary Obligor incurring obligations of any other insurance company; and "Obligee" shall not include any such insured or annuitant. This Guarantee is an absolute, unconditional and continuing guarantee of the full and punctual payment of the Obligations and not of their collectibility only, subject to the condition that the Obligee shall be required to attempt first to collect the Obligation by filing a claim against the Primary Obligor if the terms of the Contract so require. Should the Primary Obligor default in the payment of any of the Obligations, the obligations of the Guarantor hereunder shall become due and payable to the Obligee 5 business days after the date of such default, without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be required by the Obligees on any number of occasions.

2. UNLIMITED GUARANTEE. The liability of the Guarantor hereunder shall not be limited to any specific sum. An Obligee's dealings with the Primary Obligor need not be limited to any particular sum as a condition to requiring payments by the Guarantor hereunder.

3. PAYMENT IN ACCORDANCE WITH CONTRACT TERMS. The Guarantor agrees that the Obligations will be paid strictly in accordance with the terms of the Obligee's Contract, as governed by the laws and regulations applicable when the Contract became effective. However, this Guarantee shall not extend to any increase in an Obligation arising from any law or regulation (a) applied retroactively or (b) increasing the Obligation under any contract already in effect.

4. WAIVERS BY GUARANTOR. The Guarantor waives presentment, demand, protest, notice of acceptance, notice of Obligations incurred and all other notices of any kind, any right of set-off or counterclaim between the Guarantor and the Primary Obligor, any right to require the marshaling of assets of the Primary Obligor, and all suretyship defenses generally. Without limiting the generality of the foregoing, the Guarantor agrees that the obligations of the Guarantor hereunder shall not be released or discharged, in whole or in part, or otherwise affected by (a) any extensions or renewals of any Obligation; (b) any rescissions, waivers, amendments or modifications of any of the terms or provisions of any Contract; (c) the substitution of any entity secondarily liable for any Obligation; or (d) any other act or omission by the Primary Obligor which might in any manner or to any extent vary the risk of the Guarantor, all of which may be done without notice to the Guarantor.

5. UNENFORCEABILITY OF OBLIGATIONS AGAINST PRIMARY OBLIGOR. If for any reason the Primary Obligor has no legal existence and is therefore under no legal obligation to discharge any of the Obligations, this Guarantee shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations.

6. EFFECT OF PRIMARY OBLIGOR'S INSOLVENCY. If the time for payment of any Obligation payable by the Primary Obligor is stayed upon the insolvency, bankruptcy, rehabilitation, liquidation, conservation or dissolution of the Primary Obligor, all such amounts otherwise subject to payment pursuant to the terms of a Contract shall nonetheless be payable by the Guarantor hereunder forthwith on demand by the Obligee. If any amount paid by the Primary Obligor to an Obligee in payment of an Obligation is recaptured by the Primary Obligor or its representative as a result of the insolvency, bankruptcy, rehabilitation, liquidation, conservation or dissolution of the Primary Obligor, all such amounts shall nonetheless be payable to the Guarantor here-under forthwith on demand by the Obligee.

EXHIBIT A

7. SUCCESSORS AND ASSIGNMENT. This Guarantee shall be binding upon the Guarantor and its successors. This Guarantee shall not be assignable; except that in the event of any sale, combination, merger, acquisition, restructuring or other event that results in one or more persons or entities, other than the Guarantor and any of its affiliates, possessing the power to direct or cause the direction of the management, business and affairs of the Primary Obligor, whether through the ownership of voting securities, by contract or otherwise, the Guarantor may assign, in while or in part, its liability under this Guarantee.

8. BENEFICIARIES. This Guarantee is expressly for the benefit of the Obligees.

9. AMENDMENTS AND WAIVERS. No amendment of waiver of any provision of this Guarantee nor consent to any departure by the Guarantor therefrom shall be effective unless the same shall be in writing and signed by the Guarantor and the Primary Obligor. No failure on the part of any Obligee to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any other right hereunder preclude any other or further exercise thereof or the exercise of any other right.

10. TERMINATION. (a) For purposes of this Guarantee:

"Capitalization Event" means any transaction or event that results in an increase in the Primary Obligor's capital or surplus or both.

"Primary Obligor's Ratings" means the rating issued by Standard & Poor's Corporation (or any successor thereto) with respect to the Primary Obligor's claims-paying ability and the rating issued by A.M. Best Company, Inc. (or any successor thereto) with respect to the Primary Obligor's financial strength.

"Sale Event" means any sale, combination, merger, acquisition, restructuring or other event that results in one or more persons or entities, other than the Guarantor and any of its affiliates, possessing the power to direct or cause the direction of the management, business and affairs of the Primary Obligor, whether through the ownership of voting securities, by contract or otherwise.

"Termination Date" means any date determined as such by mutual agreement of the Guarantor and the Primary Obligor.

(b) As of the Termination Date, (i) this Guarantee shall terminate with respect to, and the Guarantor shall not be liable hereunder to guarantee, any Obligations arising out of or in connection with any Contract issued on or after the Termination Date; but (ii) this Guarantee shall continue in effect with respect to, and the Guarantor shall continue to be liable hereunder to guarantee, any Obligations arising out of or in connection with any Contract issued on or after the Effective Date and before the Termination Date, except as otherwise provided in Section 10(c).

(c) If at any time after a Sale Event either of the Primary Obligor's Ratings is at least as high as it was immediately before such Sale Event, then as of such time this Guarantee shall terminate with respect to, and the Guarantor shall not be liable hereunder to guarantee, any Obligations arising out of or in connection with any Contract. If at any time after a Capitalization Event either of the Primary Obligor's Ratings is issued without reflecting or acknowledging this Guarantee and such Rating is at least as high as was such Rating reflecting or acknowledging this Guarantee immediately before such Capitalization Event, then as of such time this Guarantee shall terminate with respect to, and the Guarantor shall not be liable hereunder to guarantee, any Obligations arising out of or in connection with any Contract.

11. GOVERNING LAW; SUBMISSION TO JURISDICTION. This Guarantee shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts (without regard to conflicts of laws principles). For purposes of all legal proceedings by an Obligee to enforce this Guarantee, the Guarantor hereby submits to the non-exclusive jurisdiction of any court having jurisdiction over the Primary Obligor in a legal proceeding by such Obligee to enforce an Obligation.

IN WITNESS WHEREOF, each of the undersigned have caused this Guarantee to be executed as of the Effective Date.

Liberty Mutual Insurance Company

By: _____

Title: Senior Vice President & CFO
Liberty Life Assurance Company of Boston

By: _____

Title: Vice President & Comptroller


Liberty Mutual.

MS 2003255